THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID L. GREEN, Defendant-Appellant.

Third District   No. 79-832

Opinion filed April 29, 1980.—Rehearing denied June 6, 1980.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

984

Edward Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Following a bench trial the defendant, David L. Green, was found guilty of home invasion, armed robbery and armed violence (burglary), all Class X felonies. The trial judge held a sentencing hearing and considered a presentence report and then sentenced the defendant to 10 years imprisonment for each offense, each sentence to be served concurrently with the others, but consecutively to any sentence the defendant was then serving.

The defendant raises three questions on appeal: whether the defendant was proved guilty beyond a reasonable doubt of armed violence (burglary) where the State failed to prove that the defendant remained inside the subject home without authority; whether the trial judge erred in failing to specify on the record for the reasons for his imposition of a consecutive sentence; and whether the language used by the trial court in ordering that the defendant's three concurrent sentences for the instant offenses be served consecutively to "any sentences that the defendant may presently be serving in the Department of Corrections" was improperly vague.

The record reveals that on February 6, 1979, at approximately 6:30 p.m., the defendant entered the home of Shirley George without authority. The home was occupied by the three George children, Tammy (age 15), Jerry (age 13), and Dorothy (age 12), and their cousin, Kimberly (age 8). While in the house the defendant twice pointed a gun at Kimberly's head, both prior to and after removing approximately $80 to $90 worth of meat from the freezer. After placing the meat in a paper bag the defendant told Dorothy to unlock the front door and, when she was unable to unlock the top lock, the defendant pushed her aside, opened the door and left alone.

Identification of the defendant as the perpetrator by the George children occurred during questioning by the police on the night of the incident. Evidence produced at trial showed that Tammy, Jerry, and Dorothy George and their mother, Shirley George, knew the defendant by sight and had seen him take a shortcut through their yard several times prior to the incident in question. The State's evidence at trial was, for the most part, undisputed.

The defendant first argues on appeal that the evidence presented at trial failed to conform to the pleadings in that it failed to prove that the defendant remained inside the George home without authority. Count III of the indictment charged the defendant with the offense of armed violence, in that:

"He, while armed with a dangerous weapon, to wit: a pistol, committed the felony of burglary in that he knowingly remained, without authority, within the building of Shirley George at 508 State Street, Joliet, Illinois, with the intent to commit therein a theft."

The State contends that any variance between the indictment and the proof produced at trial was nonfatal.

We agree with the defendant that his conviction for armed violence must be reversed, because the State failed to prove that he remained within the George home without authority, an essential element of the indictment. Indeed, one of the necessary elements of proof of the home invasion charge was the defendant's unlawful entry into the home. Having proved that fact, the State could not then assert that the defendant entered the George home lawfully and remained unlawfully.

In *People v. Vallero* (1978), 61 Ill. App. 3d 413, 378 N.E.2d 549, we examined burglary-by-remaining and noted that the statutory language is aimed at a situation where a defendant lawfully enters a building and then conceals himself with the intent to commit a felony, as in *People v. Manning* (1977), 46 Ill. App. 3d 877, 361 N.E.2d 370, *aff'd in part and rev'd in part* (1978), 71 Ill. 2d 132, 374 N.E.2d 200. In *Vallero* the defendant's conviction was overturned because the State failed to prove that the defendant entered or remained within a building with the intent to commit a felony.

Justice Stengel's concurring opinion in *Vallero* disagreed with the majority's suggestion that the defendant must possess the requisite criminal intent at the time he enters the building lawfully. We cannot agree with the State's argument that a valid interpretation of *Vallero* and of Justice Stengel's special concurring opinion indicates that burglary by unlawful entry and burglary by remaining are the same offense, and thus, that the "remains within" provision of the burglary statute is superfluous. Justice Stengel's comments in *Vallero* were meant to clarify the point at which criminal intent is manifested once an individual has lawfully entered and unlawfully remained within a building and did not concern the particular mode of entry.

In the case at bar the point in contention is not at what point the defendant manifested a criminal intent but whether the defendant can be said to have "unlawfully remained" in the George home. Thus, it is clearly distinguishable from *Vallero* and the "remains within" language is of critical importance. Here the defendant unlawfully entered the George home, as proved by the State in seeking a conviction on the home-invasion charge. The defendant cannot then be said to have lawfully entered and unlawfully remained as the armed violence indictment charges.

The State contends that the language in the indictment specifying how the burglary was perpetrated is surplusage. With this contention we disagree, since the statute provides two alternative ways to commit burglary (by unlawful entry or by unlawfully remaining following lawful entry), and hence an indictment must specify which method is involved. In *People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171, our supreme court held that indictments charging aggravated battery which failed to specify which of the alternative methods of committing the underlying battery was employed were fatally defective. By analogy, in the present case the indictment in question is not defective in that it does specify burglary-by-remaining. The problem arises because the State's proof failed to conform to the charges set forth in the indictment.

In addition the State asserts that the words "remain within" in the burglary statute (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) are extraneous. This assertion ignores the cardinal rule of statutory construction that significance and effect should, if possible, be accorded every word. No word or clause should be rendered meaningless. *People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171.

■■ Plainly the variance in the indictment was fatal. Since one of the purposes of an indictment is to allow the defendant to prepare for trial (*People v. Tripkovich* (1972), 6 Ill. App. 3d 37, 284 N.E.2d 323), it cannot be said that the armed violence indictment in the present case, based on burglary by remaining, enabled the defendant to defend himself from an allegation that he entered the premises unlawfully with the intent to commit a theft. Yet this defense would be required by adoption of the State's theory that only one offense of burglary exists statutorily. Because the variance was fatal and the State's proof failed to conform to the pleadings, the defendant's conviction for armed violence must be reversed.

Even if we considered the variance in the indictment nonfatal, the fact that the defendant's armed-violence and home-invasion convictions were based on the identical act of entry would require us to vacate the armed violence conviction. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) It is true that home invasion involves an additional act of a threat with a dangerous weapon, but the same act of unlawfully entering the George residence forms the basis for the defendant's conviction of armed violence.

■■ From a reading of the record it appears that in order to avoid the prohibition against multiple convictions for the same physical act, the State chose to charge the defendant with armed violence (burglary-by-remaining) since the home invasion charge involved the act of unlawful entry. This amounts to "double dipping," a practice condemned by the

Illinois Supreme Court in *People v. King,* and cannot serve as the basis for convictions for both home invasion and armed violence.

Having determined that the defendant's conviction for armed violence must be reversed, our next consideration must be the defendant's request that his sentence on the home-invasion and armed-robbery convictions be vacated and his cause be remanded for a new sentencing hearing because the trial court may have been influenced by the armed violence conviction when imposing the other sentences.

The defendant relies on *People v. Vallero* (1978), 61 Ill. App. 3d 413, 378 N.E.2d 549, and *People v. Deal* (1979), 69 Ill. App. 3d 74, 387 N.E.2d 21. In each of those cases we remanded for resentencing on remaining convictions when certain of the defendant's convictions were reversed.

In both *Deal* and *Vallero* the convictions reversed were for greater offenses than those remaining; however, we feel the reasoning in those cases is applicable to the present case in which the defendant was convicted of three Class X felonies and sentenced to concurrent 10-year sentences for each. The trial court may well have been influenced by the defendant's conviction for armed violence in sentencing him for the two other convictions, thus we remand for a new sentencing hearing on the remaining convictions for home invasion and armed robbery.

The defendant next contends that the trial court erred in ordering that his sentences for the instant offenses be served consecutively to the sentences he was then serving, because the trial court did not state for the record that the consecutive sentences were required to protect the public. His contention is based on the following paragraph from the new sentencing act, which became effective February 1, 1978:

> "(b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—4(b).)

This section amended the former law which provided that the court "may set forth" the basis for imposing consecutive sentences in the record. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—4(b).) The defendant argues that this change in language mandates that a trial judge specify in the record his reasons for imposing a consecutive sentence, citing *People v. Snyder* (1979), 77 Ill. 2d 459, 397 N.E.2d 799.

In *Snyder* the specific issue before the court was whether the language found in section 5—8—4(b) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—4(b)), proscribed the imposition of a consecutive sentence

when, in the aggregate, the minimum and maximum sentences were less than those which a concurrent sentence would have imposed. The *Snyder* court, in finding no proscription, suggested that the language is mandatory. The State argues that this suggestive language is merely dicta. While the State may be correct in its contention, we agree with the *Snyder* court's interpretation of section 5—8—4(b) and find that the trial judge in the instant case failed to adequately specify his reasons for the imposition of a consecutive sentence.

Although the record in the present case indicates that the trial judge considered factors in aggravation and mitigation and examined the presentence report which revealed that the defendant was previously convicted of a series of offenses, including the two counts of burglary for which he was serving concurrent sentences at the time of sentencing in this case, one should not have to infer that the trial judge believed consecutive sentences were required to protect the public from the defendant's further criminal conduct. The language of the statute is explicit: the basis for the trial court's imposition of consecutive sentences shall be set forth. An indirect acknowledgement of the statute's purposes is insufficient.

One of the primary purposes of the provisions in the new sentencing act requiring a trial judge to set forth his reasons for imposing a particular sentence "is to enable reviewing courts to determine just what went into the sentencing decision and whether it is consistent with the statutory objectives." (*People v. Meeks* (1979), 75 Ill. App. 3d 357, 366, 393 N.E.2d 1190, 1197.) The record in the instant case does not satisfy this purpose, and upon remand for resentencing the trial court must indicate on the record its reasons for imposing consecutive sentences if such sentences are ordered.

Lastly, the defendant argues that the language used by the trial judge in declaring that the three concurrent sentences imposed for the instant offense were to be served consecutively to "any sentences that the defendant may presently be serving in the Department of Corrections" was improper, because it was so broad that it could apply to other sentences not in the record. With this contention we cannot agree.

The presentence report indicated that the defendant was serving two concurrent sentences of three years each for two prior burglary convictions at the time of sentencing in the present case. This court has found that reference to a presentence report is proper to determine what sentences the defendant is currently serving. *People v. Dimond* (1977), 54 Ill. App. 3d 439, 369 N.E.2d 593.

The defendant relies on *People v. Walton* (1969), 118 Ill. App. 2d 324, 333, 254 N.E.2d 190, 194, in which the trial court imposed a sentence "to be served consecutively to any other sentence which may have been

imposed." The appellate court found this language too indefinite to identify to which sentence the new sentence was to be served consecutively. The language in *Walton* is easily distinguishable from that used in the case at bar. In *Walton* the language is general, ambiguous and not necessarily limited to specific sentences. In the present case the language used clearly defines those sentences to which the present sentences must be served consecutively. Specifically, the reference is to the two sentences the defendant was presently serving in the Department of Corrections for prior burglary convictions.

The defendant also relies on *People v. Logan* (1974), 23 Ill. App. 3d 41, 318 N.E.2d 94, but that case is distinguishable from the case at bar. In *Logan* the trial court imposed a sentence to be served consecutively to any other sentence the defendant was then serving. On appeal, this language was held to be too vague. Although the wording in *Logan* is quite similar to that in the present case, the defendant's conviction and sentencing history in *Logan* differs significantly from that of the defendant in the case at bar. In *Logan* the defendant had been convicted on three prior occasions and given three different sentences when, upon his fourth conviction, the trial court ordered his sentence to run consecutively to any other sentence he was then serving. However, in two separate appeals, two of the defendant's prior convictions were reversed. An appeal from the third prior conviction was pending. Thus, in *Logan* it was impossible to know whether the defendant's latest sentence was to have been consecutive to one of the first two prior convictions subsequently reversed or consecutive to the third conviction still on appeal. In the case at bar the defendant, at the time of sentencing, was serving only two concurrent sentences in the Department of Corrections; thus, there could be no doubt that the sentences imposed in the present case were to be served consecutively to those two sentences.

Although we find no error in the trial court's use of the phrase, "consecutive to any sentences that the defendant may presently be serving in the Department of Corrections," we nevertheless caution the trial court to be precise in its language during the sentencing hearing to be held pursuant to this opinion.

For the foregoing reasons the defendant's conviction for armed violence is reversed; the convictions for the offenses of home invasion and armed robbery are affirmed; however, pursuant to the reasons set forth herein a new sentencing hearing should be conducted by the trial court as to these offenses, and this case is remanded for such purpose.

Reversed in part and remanded in part with directions.

ALLOY, P. J., and STENGEL, J., concur.